### [No. 1517.]
### DARGIN v. CRANSON ET AL.

1. CONTRACTS—SPECIFIC PERFORMANCE.
   Defendant, the owner of a mining claim, contracted with plaintiffs to deed them a certain interest in the claim in consideration that they should sink a shaft to a certain depth and obtain a patent at their expense, conditioned that the patent should be obtained by a certain time. Plaintiffs sunk the shaft and at defendant's request paid him part of the money to procure patent, and offered to pay him the balance whenever he wanted it. At defendant's suggestion the procurement of the patent was postponed until winter, at which time plaintiffs tendered him the balance of the money, which he refused on the ground that it was too late. *Held* that the contract of plaintiffs to procure patent should be construed to mean to furnish the means to procure it in defendant's name. That defendant by postponing the time himself, had waived the condition that the patent should be obtained by a certain time, and that plaintiffs were entitled to a deed upon payment to defendant of the balance necessary to procure patent, and they were not required to wait till the patent issued before bringing suit for performance of the contract.

2. CONTRACT—CONSTRUCTION.

In a contract to convey land by a good and sufficient deed the phrase "good and sufficient deed" must be construed with reference to the title held by the grantor. If he has only a possessory title the contract is satisfied by a deed which conveys that title.

*Appeal from the District Court of El Paso County.*

Mr. W. S. MORRIS and Messrs. C. E. & F. HERRINGTON, for appellant.

Messrs. GUNNELL & HAMLIN, for appellees.

THOMSON, P. J.

By the terms of a written contract, made on the 22d day of December, 1894, the appellant agreed, in consideration of the sinking by the appellees of the shaft of the Commonwealth Mining claim in Cripple Creek mining district, El Paso county, Colorado, to the depth of fifty feet, and the obtaining of a patent for the claim at their expense, to convey to them a three-fourths interest in the claim, provided they obtained the patent by January 1, 1896. This suit was brought by the appellees on the 5th day of February, 1896, to compel a conveyance of the interest. The complaint alleged the sinking of the shaft by the appellees to the depth required by the contract, the payment by them to the appellant of different sums of money for the purpose of defraying the expense of procuring the patent, the refusal of the defendant to receive a further sum tendered to him for the same purpose, and their readiness and willingness to pay whatever amount might be necessary to the procuring of the patent. The complaint also averred that the defendant had delayed proceedings for a patent, to enable him to assert that the plaintiffs had forfeited their rights under the contract, and had made the claim that they had no interest in the property.

The answer admitted the contract, admitted the payment to the defendant by the plaintiffs upon the expense of pro-

curing patent, of $31.00 on the 14th of January, 1895, and $20.00 on the 16th of February, 1895, but denied the offer by the plaintiffs of any other sum, and denied that the defendant had postponed the proceedings for patent with the intention to claim a forfeiture of the plaintiffs' interest. It averred that the defendant had proceeded with due diligence to procure a patent, and, in obtaining it, had been compelled to expend $211, of which, except $51.00, nothing had been paid by the plaintiffs.

The court rendered a decree that the defendant execute a proper and sufficient deed of conveyance to the plaintiffs of the interest described in the contract, upon payment to him, or the deposit in court for his benefit, by the plaintiffs, of $160. The defendant appealed.

The statement in the complaint of the sinking of the shaft in conformity with the requirements of the contract, was not denied by the answer. It was therefore admitted. The testimony for the plaintiffs was that the work mentioned in the contract was completed before June, 1895, and that it amounted to more than $500. The law makes the expenditure of that amount upon a mining claim a prerequisite to the procurement of a United States patent for it. The testimony also was that after the work was done, the plaintiffs, a number of times, during the summer of 1895, notified the defendant that they were ready and anxious to proceed in the matter of the patent, but he disfavored and discountenanced movement at that time, and advised postponement until the next winter, when there would be snow on the ground, and the chances of observation of their proceedings by others, and consequently of obstructions in the way of adverse claims, would be diminished, and that, finally, on the 23d day of December, 1895, they offered him $150 upon patent expenses, but he refused it, saying that the offer came too late. It was further testified that he had informed them that it would require but little money to begin with; that no more money would be needed until the close of the proceeding; that he would let them know when he wanted money, and that it

was at his request that the first payment was made, he representing that he wanted the money for the purposes of a patent survey. The defendant contradicted the plaintiffs in some particulars, but as the finding of the court was in their favor, we must accept their statements as true.

The first position taken by the defendant is that the suit was premature, because it did not appear that any patent had, as yet, been obtained for the land. A part of the consideration for the plaintiffs' agreement was the sinking of a shaft, and the remainder, the obtaining by the plaintiffs of a patent to the ground at their own expense, but the agreement was subject to the proviso that the patent should be obtained by January 1, 1896. This proviso was no part of the consideration expressed in the agreement. It was simply a condition on which the defendant's liability was made to depend. The plaintiffs might do the work, and they might obtain the patent. It would then be the duty of the defendant to execute the conveyance, provided the patent was obtained by January 1, 1896. So far as this condition is concerned, it was waived by the defendant. It was at his instance that the delay took place which rendered the fulfillment of the condition impossible, and therefore he cannot claim anything by reason of its nonfulfillment. Consequently, we must regard it as expunged from the contract, and ascertain the rights and obligations of the parties from what remains. The plaintiffs were to sink a shaft, and a patent was to be obtained at their expense. There is no question concerning the sinking of the shaft, and all that is to be determined in this connection, is the meaning of the words relating to the procurement of the patent. For the purpose of showing the connection in which the words occur, as well as the phraseology, we quote the following from the contract: "Agreement made and entered into by and between D. G. Dargin, of El Paso county, Colorado, party of the first part, and J. W. Yeaman and H. I. Cranson, of the same county and state, parties of the second part; "Witnesseth, for and in consideration of sinking the Commonwealth Mining claim to the depth of fifty feet and

obtaining a patent on the same at their own expense and all labor performed to be paid by the parties of the second part. The party of the first part hereby agrees to convey to the parties of the second part by good and sufficient deed a three-fourths interest to the said Commonwealth Mining claim." It is contended that the foregoing contains an agreement by the plaintiffs to obtain the patent themselves. The language used does not, of necessity, support the contention, and is entirely consistent with another interpretation. The parties must be presumed to have had in view the law governing proceedings to procure patent, and to have contracted with reference to it. Now the plaintiffs could not, of themselves, obtain a patent on the defendant's mining claim. The application must be made by him, and verified by him. No person could act for him, except that under certain conditions which do not appear to have existed here, the application might be made in his behalf by an attorney in fact, solemnly authorized by him for that special purpose. The plaintiffs could not apply in their own names, and the contract conferred upon them no power to apply in his name. The patent must, therefore, be obtained by him, and not by them. All they could do towards its procurement would be to bear the expense attendant upon the proceeding. The contract does not say in terms that they should obtain the patent. The obtaining of the patent at their expense is stated as a consideration for the agreement of the defendant to convey, but by virtue of the law, the patent must be obtained by him, and the language is not sufficiently definite to compel us to give it a construction which would require the plaintiffs to perform an act, which in the nature of things they could not perform. We think that all that the contract bound them to do, to entitle them to the conveyance, was to furnish the money necessary to the procurement of the patent, and the contract seems to have been so construed by all parties to it. It appears that the defendant caused the patent survey to be made, and called upon the plaintiffs for, and received from them, money for the purpose. He also told them that he would

let them know when he wanted money, and he did ask them for money, which they paid. They urged him to proceed with the application, and he refused, not because the duty devolved upon him, but because he thought it would be better policy to proceed later. In their several conversations on the subject, the plaintiffs and the defendant seem always to have taken it as a matter of course that the steps for the procurement of the patent should be taken by the defendant, and we think they were right.

The contract did not provide when the conveyance should be made. We find nothing in it which would compel the plaintiffs to wait until after the patent should be issued. As soon therefore as they performed what was required of them, they could exact from the defendant the performance of what was required of him. It was not their fault that the money was not paid to him. He refused to receive it when it was offered, and for a reason which indicated that it was his intention to deprive them of their interest. He said they were too late. The only meaning which those words will bear is that, by delay, they had forfeited their right to consideration under the contract. Failing to induce him to accept the money, they commenced their suit, and offered to pay whatever amount was required to make their performance of the contract complete. He answered that to obtain the patent he had laid out $211, an excess over the amount he had received from them, of $160. The offer the plaintiffs made to him was $10.00 less than this amount, but he did not refuse it because it was not enough, or inform them what the true amount was. The meaning of his refusal was that they were not entitled to the privilege of paying anything, or to be considered at all in connection with the patent. As he, and he alone, was responsible for the delay, it did not lie in his mouth to say that the plaintiffs were too late. As the amount which they should pay was ascertained, upon the payment of that amount to him, or its deposit in court for his benefit, they were entitled to the conveyance. See *Rust v. Strickland*, 21 Colo. 177.

The following occurs in the testimony of the defendant: "A claim crossed me belonging to the Henrietta company, and they had done no work for three years, and I thought if I could get a patent through right off I could do it without their adversing me. They had no vein, but had the oldest location. That was the reason I wished to push it through.

"Q. Did any controversy arise between your claim and that claim?

"A. Yes, sir; they put an adverse on..

"Q. Is that pending now?

"A. Yes, sir.

"Q. It has not been determined?

"A. No, sir."

Counsel intimate that the cost of the litigation occasioned by the adverse claim of which the defendant spoke, must be considered as part of the expenses of procuring the patent. We do not think so, but it is unnecessary to say why, because the answer claimed nothing on account of the adverse. It did not mention the adverse. It gave the exact expenditure on account of the patent, and the exact amount owing by the plaintiffs. Further than that, in relation either to the liability of the plaintiffs, or any claim of the defendant against them, it said nothing. He was bound by his answer, and must be confined to the case which it made.

The contract provided for the conveyance of the interest by good and sufficient deed, and the decree was for the execution by the defendant of a proper and sufficient deed. Some question is raised as to the meaning of those words. We think they should be construed with reference to the title by which the defendant held the property, and which he contracted to convey. A contract to convey a possessory title is not a contract to convey an absolute title, and when a party undertakes to convey a possessory title by good and sufficient deed, his agreement is satisfied by a deed which conveys that title. The title of the plaintiffs was acquired under the mining laws of the United States and of this state. It was subject to the paramount title of the United States,

but it was the only title he held, and it was the title with reference to which he contracted, and we think that a deed which would vest that title in the plaintiffs would be a good and sufficient deed.   See Pom. Spec. Per. § 364.

The judgment will be affirmed.

*Affirmed.*